[Cite as *State v. Smith*, 2019-Ohio-2915.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                                :

    Plaintiff-Appellee,              :

    v.                                          :

JOHNATHAN SMITH,                       :

    Defendant-Appellant.          :

No. 107654

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 18, 2019

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-17-620359-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Ryan J. Bokoch, Assistant Prosecuting Attorney, *for appellee.*

Mark A. Stanton, Cuyahoga County Public Defender, and Jeffrey Gamso, Assistant Public Defender, *for appellant.*

FRANK D. CELEBREZZE, JR., J.:

{¶ 1} Defendant-appellant, Johnathan Smith ("appellant"), brings the instant appeal seeking specific performance of a plea agreement that he entered into with the state of Ohio. After a thorough review of the record and law, this court affirms.

## I. Factual and Procedural History

{¶ 2} Appellant, and codefendant Leon Edwards ("Edwards"), were each indicted in a ten-count indictment with various charges related to a drive-by shooting involving a mother and her two children, ages 7 and 4, which occurred on August 6, 2017. As a result of this heinous act, the younger child suffered severe brain injuries from a gunshot wound to the head. One of the bullets entered his brain near his right temple, went through the frontal lobe, and exited the front of his skull.

{¶ 3} Specifically, appellant and Edwards were charged as follows: Count 1, attempted murder, a first-degree felony in violation of R.C. 2923.02(A) and 2903.02(A); Count 2, felonious assault, a second-degree felony in violation of R.C. 2903.11(A)(1); Count 3, felonious assault, a second-degree felony in violation of R.C. 2903.11(A)(2); Count 4, attempted murder, a first-degree felony in violation of R.C. 2923.02(A) and 2903.02(A); Count 5, attempted felonious assault, a third-degree felony in violation of R.C. 2923.02(A) and 2903.11(A)(1); Count 6, felonious assault, a second-degree felony in violation of R.C. 2903.11(A)(2); Count 7, attempted murder, a first-degree felony in violation of R.C. 2923.02(A) and 2903.02(A); Count 8, attempted felonious assault, a third-degree felony in violation of R.C. 2923.02(A) and 2903.11(A)(1); Count 9, felonious assault, a second-degree felony in violation of R.C. 2903.11(A)(2); and Count 10, discharge of a firearm on or near prohibited premises, a first-degree felony in violation of R.C. 2923.162(A)(3). All

counts, except for Count 8, had accompanying one-, three-, and five-year firearm specifications.

{¶ 4} Appellant was arraigned on August 23, 2017. Appellant pled not guilty to the indictment and the matter proceeded through the pretrial proceedings. Although the record is unclear, appellant apparently proffered a statement to the state after his arraignment. After this proffered statement, appellant and the state entered into a plea agreement. The plea agreement provided that appellant would testify truthfully at Edwards's trial. In exchange for appellant's truthful testimony, the state would dismiss various charges and firearm specifications, and appellant would plead guilty to an amended indictment.

{¶ 5} At appellant's change-of-plea hearing on June 5, 2018, prior to appellant pleading guilty to an amended indictment, the prosecutor stated the plea agreement as follows:

> [PROSECUTOR]: Pursuant to the agreement, the [s]tate of Ohio will accept from [appellant] a plea of guilty to the following counts: [p]lead guilty to count 2, felonious assault, a felony of the second degree, as well as a three-year firearms specification on that. We would dismiss the remaining firearms specifications on that count but also plead guilty to count 5, which is attempted felonious assault, a felony of the third degree as indicted, and there are no specifications on that count. Also plead guilty to count 9, which is felonious assault, a felony of the second degree. We move to dismiss all specifications on that count as part of the plea agreement.
>
> Also as part of the plea agreement, [appellant] would agree to testify truthfully and consistently in the prosecution of his co-defendant, and that would be consistent with the proffer statement that he made with the [s]tate of Ohio during the pendency of this case. If [appellant] did so agree to those terms and fulfill those terms, the [s]tate would move to dismiss the remaining counts against the defendant in this matter,

and if [appellant] did back up on his end of the deal, the [s]tate would move to revoke this plea and go forward on the full indictment.

There have been no threats or promises made other than just what's been stated in open court, Your Honor.

THE COURT: Thank you. [Appellant's counsel], is this your understanding?

[APPELLANT'S COUNSEL]: Yes, Your Honor.

(Tr. 3-4.) Appellant then entered a guilty plea to the amended indictment that consisted of Count 2, felonious assault, with a three-year firearm specification, Count 5, attempted felonious assault, and Count 9, felonious assault. At the conclusion of the change-of-plea hearing, after accepting appellant's guilty plea, the trial court further explained to appellant that:

THE COURT: Now, [appellant] you heard what [the prosecutor] said. Your plea is contingent upon your cooperation with the [state]. You've already cooperated and you've given your statement. There may come a time that you have to testify in the trials of your co-defendant. Okay? The [state] will have the opportunity, based upon this plea agreement, if you do not testify truthfully and consistent with your prior statement, the [state] can revoke this plea offer. Do you understand that?

[APPELLANT]: Yeah.

(Tr. 18.) The trial court also informed appellant that he would be subject to a mandatory prison term of, at the very least, five years. The trial court further explained to appellant that he could potentially be sentenced to as many as 22 years in prison on the counts in the amended indictment. Appellant stated that he understood the sentencing range. The trial court scheduled a sentencing hearing for June 27, 2018.

**{¶ 6}** The trial court then issued a journal entry rescheduling the sentencing hearing for July 12, 2018. On July 12, 2018, the state asked for a continuance so as to have the trial court impose a sentence after Edwards's trial. The following exchange between the parties was had at the scheduled sentencing hearing on July 12, 2018:

> [PROSECUTOR]: Part of the terms of his plea agreement was to testify truthfully against his co-defendant whose trial is set for July 23rd. I did have this case set today. I thought it was just set for the pretrial of his co-defendant. I did not realize the sentencing was set. We'd ask that this sentencing be continued until after his full — his end of the bargain in testimony. The [c]ourt would also be able to evaluate that testimony in deciding a proper sentence for [appellant].
>
> THE COURT: Okay. Thank you, [prosecutor]. [Appellant's counsel], would you like to be heard on continuing the sentencing until after the co-defendant's trial?
>
> [APPELLANT'S COUNSEL]: Your Honor, I have no objection. I anticipated that situation; that's usually the situation.
>
> THE COURT: Okay. [Appellant], do you understand what's going on?
>
> [APPELLANT]: Yes.
>
> THE COURT: You understand as part of your plea agreement that you agree to testify against the co-defendant in this case? The co-defendant's trial is scheduled on July 23rd. So once you have testified, and the prosecutor is satisfied that you testified truthfully and the Court is as well, then we'll schedule your sentencing hearing. Okay?
>
> [APPELLANT]: Yes.

(Tr. 23-24.) The trial court also added:

> THE COURT: So if you don't testify, this plea agreement goes out the window. All right? The [state] has the option of saying: [w]e're taking it back, and all of the other charges that you were indicted on come back into play and then you're going to have to go to trial. Do you understand that?

[APPELLANT]:  Yes.

THE COURT:  You understand?  You understand that this plea agreement depends on your testimony at trial?  You understand that?

[APPELLANT]:  (Nodding head.)

THE COURT:  Yes?  You have to answer me out loud.

[APPELLANT]:  Yes.

(Tr. 31.)  In addition, at the July 12, 2018 scheduled sentencing hearing, the trial court terminated appellant's community control sanctions in CR-15-600095-D.

{¶ 7} Edwards's matter proceeded to a jury trial and appellant took the stand in the state's case-in-chief.  From our review of the record in the instant matter, appellant refused to testify.  On August 10, 2018, the jury returned a verdict of not guilty against Edwards on all ten counts.

{¶ 8} After Edwards's trial, appellant's matter proceeded to sentencing on August 15, 2018.  At the sentencing hearing, appellant made an oral motion, while duly represented by retained counsel, to withdraw his guilty plea.  The trial court heard arguments from appellant relating to his oral motion to withdraw his guilty plea.  The trial court thereafter denied appellant's oral motion.

{¶ 9} With regard to appellant's refusal to testify, the prosecutor stated the following:

Your Honor, based on the charges that [appellant] pled to in which you've outlined, he's facing anywhere between a five year and 22 year sentence.  That plea agreement was done both in anticipation of [appellant's] cooperation and also in anticipation if he refused to cooperate.  That is why there's such a large range for the [c]ourt to consider.  [Appellant] took the witness stand last week and he decided he did not wish to cooperate and he knew that the [c]ourt would be

considering that when considering this range. What I took from that is that [appellant] wanted to take full responsibility for this crime by refusing to cooperate as part of this plea agreement. And this [c]ourt has the opportunity to allow him to take that full responsibility.

(Tr. 46-47.) The trial court sentenced appellant to a prison term of 20 years.

{¶ 10} Appellant then filed the instant appeal assigning one error for our review.

I. The prosecutor breached the terms of the plea agreement in this case when, after [appellant] refused to testify at [Edwards's] trial and thereby invoked the recission provision that was a specific part of the agreement, the prosecutor did not move to revoke the agreement.

## II. Law and Analysis

{¶ 11} In appellant's sole assignment of error, he argues that the state breached the plea agreement when it failed to proceed against him under the original indictment.

{¶ 12} We note that, in general, a plea bargain is a contract and is therefore subject to the principles of contract law. *State v. Bethel*, 110 Ohio St.3d 416, 2006-Ohio-4853, 854 N.E.2d 150, ¶ 50. In this regard, if a violation of a plea agreement is found, the remedy *may* be specific performance. *State v. Simpson*, 158 Ohio App.3d 441, 443, 2004-Ohio-4690, 816 N.E.2d 609 (2d Dist.), citing *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).

A contract is generally defined as a promise that is actionable upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration, and a manifestation of mutual assent. *State v. Robinson*, 8th Dist. Cuyahoga No. 82801, 2004-Ohio-740, ¶ 12, citing *Perlmuter Printing Co. v. Strome, Inc.*, 436 F.Supp. 409, 414 (N.D.Ohio 1976). A meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract. *Id.*, citing *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Industrial*

*Relations*, 61 Ohio St.3d 366, 369, 575 N.E.2d 134 (1991). As such, the terms of a plea agreement must be explicit. *State v. Padilla*, 8th Dist. Cuyahoga No. 98187, 2012-Ohio-5892, ¶ 11, citing *United States v. Benchimol,* 471 U.S. 453, 105 S.Ct. 2103, 85 L.Ed.2d 462 (1985).

*State v. McManus*, 8th Dist. Cuyahoga No. 101922, 2015-Ohio-2393, ¶ 16.

{¶ 13} In considering whether a plea agreement has been breached, we must examine what the parties reasonably understood at the time the defendant entered his guilty plea. *State v. Latimore*, 8th Dist. Cuyahoga No. 92490, 2010-Ohio-1052, ¶ 7. "In the event of a breach, the trial court may allow the defendant to withdraw his or her plea, or it may order specific performance of the plea agreement, in which case the defendant shall be resentenced by a different judge." *McManus* at ¶ 17, citing *Santobello* at 263. Furthermore, if the trial court determines that a breach occurred, the appropriate remedy is left to the sound discretion of the trial court. *Id.*, citing *Padilla* at ¶ 14. In this respect, "the terms of the plea agreement, as contained in the record, must form the basis of the trial court's determination." *State v. Underwood*, 8th Dist. Cuyahoga No. 68321, 1996 Ohio App. LEXIS 144, 23 (Jan. 18, 1996), citing *State v. Carpenter*, 68 Ohio St.3d 59, 623 N.E.2d 66 (1993).

{¶ 14} In the instant matter, appellant argues that his "refusal to testify at the Edwards's trial triggered the [state's] reciprocal duty per the [plea] agreement to move to revoke the plea." Appellant is seeking specific performance, which, as he argues, would require the state move the trial court to revoke his guilty plea and proceed against appellant with the original indictment. Because the state has failed

to move to revoke his plea, appellant argues the state has breached the plea agreement. We do not agree.

{¶ 15} The conditions of the plea agreement, as set forth on the record at the June 5, 2018 change-of-plea hearing, were as follows: the state would amend the original indictment and appellant would plead guilty to the amended indictment. In return, appellant would testify "truthfully and consistently" for the state at Edwards's trial. These were the terms as placed on the record by the prosecutor at the change-of-plea hearing prior to appellant entering his guilty plea to the amended indictment. Appellant's counsel conferred that he understood these to be the terms of the plea agreement. The prosecutor stated that if appellant had failed to testify in Edwards's trial, "the [s]tate would move to revoke this plea and go forward on the full indictment." (Tr. 4.)

{¶ 16} However, after appellant entered his guilty plea to the amended indictment, the trial court stated that the state's revocation of appellant's plea was an *option*. The trial court stated, after appellant pleaded guilty to the amended indictment, "the [state] will have the opportunity, based upon this plea agreement, if you do not testify truthfully and consistent with your prior statement, the [state] *can* revoke this plea offer." (Emphasis added.) (Tr. 18.)

{¶ 17} Furthermore, at the July 12, 2018 scheduled sentencing hearing, additional information regarding the plea agreement was set forth on the record — that the prosecutor could evaluate appellant's testimony in Edwards's trial and thereafter recommend an appropriate sentence to the trial court.

{¶ 18} In light of the record before us, after we carefully scrutinized each stage of the proceedings, we do not find a breach of the terms of the plea agreement on the state's behalf. We note that there is no evidence of a written plea agreement. Appellant's proffered statement, if written or recorded, was not made part of the record for our review. The evidence before this court of the specific terms of the plea agreement is what was presented on the record at the change-of-plea hearing.

{¶ 19} Lost in appellant's argument now on appeal is his own breach of the plea agreement. Undeniably, appellant failed to perform on his end of the bargain — testify truthfully and consistently. Importantly, we note that "a defendant's failure to fulfill the terms of a plea agreement relieves the government of reciprocal obligations under the contract." *Underwood*, 8th Dist. Cuyahoga No. 68321, 1996 Ohio App. LEXIS 144, at 22, citing *United States v. Verrusio,* 803 F.2d 885, 888 (7th Cir.1986). Thus, we find no merit to appellant's argument that the state had a reciprocal duty to revoke his guilty plea to the amended indictment and proceed against him on the original indictment.

{¶ 20} Furthermore, we note that even with appellant's own breach of the plea agreement, the state still performed its condition or responsibility, in that it went forward against appellant on the amended indictment. In this regard, even though appellant breached the plea agreement, appellant still received his benefit of the plea agreement, in that appellant benefitted by not facing the additional counts and specifications contained in the original indictment. These additional counts could have exposed appellant to a possible prison sentence of approximately 48

years.  The trial court imposed a prison sentence of 20 years, which is less than half of the possible prison sentence to which appellant was exposed.

{¶ 21} Notwithstanding appellant's breach of the plea agreement, appellant has presented no evidence that he did not fully understand the terms of the plea agreement at the time he entered his plea of guilty to the amended indictment.  The trial court also made appellant aware that there was no particular agreed sentence.

> THE COURT:  And do you understand that there is no promise of any particular sentence in this case?  I can't promise you anything today on how I'm going to sentence you at your sentencing hearing.  Do you understand that?
>
> [APPELLANT]:  Yeah.
>
> THE COURT:  You sure?  What's going on with you right now?
>
> [APPELLANT'S COUNSEL]:  He's just a little nervous, apprehensive.
>
> THE COURT:  Are you satisfied with the representation you've received from your lawyer?
>
> [APPELLANT]:  Yes.

(Tr. 10.)  After accepting appellant's guilty plea to the amended indictment, the trial court again reiterated the terms of the plea agreement to appellant.

> [THE COURT]:  * * * Your plea is contingent upon your cooperation with the [s]tate of Ohio.  You've already cooperated and you've given your statement.  There may come a time that you have to testify in the trials of your co-defendant.  Okay?  They will have the opportunity, based upon this plea agreement, if you do not testify truthfully and consistent with your prior statement, they can revoke this plea offer. Do you understand that?
>
> [APPELLANT]:  Yeah.

(Tr. 18.)

{¶ 22} Although we are concerned that additional information was provided on the record after appellant entered his guilty plea, i.e., the state had the option to revoke appellant's plea and the state could evaluate appellant's testimony and thereafter recommend a sentence to the trial court, this additional information simply provides the consequences of appellant's failure to testify.

{¶ 23} Lastly, we feel compelled to note that we are saddened that absolute justice may not have been achieved in this matter. The fact that Edwards was found not guilty to these charges and appellant is left solely responsible is a loss that the victims, their families, and law enforcement must suffer through — not a loss that appellant must suffer through. The fact that this is the outcome of the criminal proceedings, against both appellant and Edwards, was an outcome that appellant was made well aware of.

{¶ 24} Accordingly, appellant's sole assignment of error is overruled.

{¶ 25} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
FRANK D. CELEBREZZE, JR., JUDGE

SEAN C. GALLAGHER, P.J., and
ANITA LASTER MAYS, J., CONCUR